## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MARY STUART RODGERS, TRUSTEE OF THE MARION KNOTT MCINTYRE REVOCABLE TRUST AND PERSONAL REPRESENTATIVE OF THE ESTATE OF MARION KNOTT MCINTYRE, | * * * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Case No.: SAG-20-00216 |
| REVEREND FATHER CHRISTOPHER SENK, | * * * | |
| Defendant. | * * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Mary Stuart Rodgers ("Plaintiff"), in her capacities as the Trustee of the Marion Knott McIntyre Revocable Trust and the Personal Representative of the Estate of Marion  Knott McIntyre, filed suit alleging various state law claims against Defendant Reverend Father Christopher Senk ("Fr. Senk") in the Circuit Court for Baltimore County. ECF 3. Fr. Senk removed the case to this Court.  ECF 1.  Presently pending is Fr. Senk's Motion to Dismiss for lack of personal jurisdiction, ECF 8.  Plaintiff filed an Opposition, ECF 9, and Fr. Senk filed a Reply, ECF 10.  In addition, both parties submitted supplemental filings discussing a case recently decided by the Maryland Court of Appeals.  ECF 11, 12.   Plaintiff filed a supplement to her original opposition, ECF 16, to which Defendant responded, ECF 17. In addition, Plaintiff has filed a Motion to Transfer the case, ECF 18, which Defendant has opposed, ECF 19. Plaintiff filed a Reply. ECF 22. No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons stated below, the Court concludes that it lacks personal jurisdiction over Defendant, Plaintiff's Motion

to Transfer, ECF 18, will be GRANTED, and Fr. Senk's Motion to Dismiss, ECF 8, will be DENIED as moot.

## I. Factual Background[1]¶

This case involves the Marion Knott McIntyre ("McIntyre") Revocable Trust, ("the Trust"). The life beneficiary of the Trust, McIntyre, passed away on December 12, 2017. ECF 3 ¶ 2. Plaintiff, the Trustee and Personal Representative of McIntyre's Estate, lives in Maryland, where she administers the Trust. *Id.* ¶ 5.

On December 5, 2000, McIntyre created and executed a Revocable Trust Agreement establishing the Trust ("the 2000 Trust"). *Id.* ¶¶ 3, 23. The 2000 Trust, and each subsequent amendment, provided income to McIntyre for life. *Id.* ¶ 23. Under the 2000 Trust, upon McIntyre's death, income was provided to McIntyre's husband, Richard A. McIntyre, for life. *Id.* Upon Richard McIntyre's death, or if he died before McIntyre, the residuary would be divided equally between McIntyre's nephew and the Snite Museum of Art at the University of Notre Dame ("Snite Museum"). *Id.* The 2000 Trust specified that "any questions of construction of this instrument and administration of the Trusts under this instrument shall be determined under the laws of Florida." ECF 14-1 at 25.

A 2001 amendment to the Trust named Richard McIntyre as the life beneficiary upon McIntyre's death, but left the other material terms, including the plans for the residuary, unchanged. *Id.* ¶ 24. Like the 2000 Trust, the amendment provided, "This instrument and all dispositions hereunder shall be governed by and interpreted in accordance with the laws of the State of Florida." ECF 14-2 at 25.

---

[1] The facts are derived from Plaintiff's Complaint, ECF 3, and attached exhibits, ECF 14, and from the substantive exhibits attached to the parties' motions papers.

McIntyre began self-reporting memory issues and possible mental decline in 2004, at 74 years of age.  ECF 3 ¶ 25. In 2005, she again amended the Trust ("2005 Amendment").  *Id.*  ¶ 26. In this version, she again left the residuary trust to Richard McIntyre, but bequeathed the entire residuary trust to the Snite Museum upon his death. *Id.*

In 2007, McIntyre told her physicians that she was having significant memory issues, in addition to sleeping issues and back pain.  *Id.* ¶¶ 27-28. She continued to report memory issues and neurological concerns during medical appointments in 2007 and 2008. *Id.* ¶ 29.

McIntyre and her husband moved within Florida to Ft. Myers, Florida, in 2009.  *Id.* ¶ 30. They began attending mass at St. Isabel's Church in Sanibel, Florida. *Id.* ¶ 31. The pastor at St. Isabel's was Fr. Senk.   *Id.*  McIntyre developed a relationship of "immediate confidence and trust" with Fr. Senk. *Id.* ¶ 33.  She began spending significant time with Fr. Senk and his housemate, Stuart Flaherty. *Id.* ¶ 35.  She took regular vacations with Fr. Senk and Flaherty, ate her meals frequently with them, began drinking alcohol (despite her previous abstinence) with Fr. Senk and Flaherty, ran errands for them (and paid for their expenses), and took Fr. Senk shopping.  *Id.* ¶¶ 37-42.

In and around 2010, McIntyre sought treatment at Johns Hopkins in Baltimore, Maryland, for further cognitive decline. *Id.* ¶ 43. Beginning in 2011, McIntyre began writing large checks personally to Fr. Senk (not made payable to St. Isabel's).  *Id.* ¶ 47, 50, 51. On July 21, 2011, McIntyre signed another amendment to the Trust ("2011 Amendment).  *Id.* ¶ 48. This version left a $10,000 distribution to "Fr. Senk as Pastor of St. Isabel Catholic Church." *Id.* The residuary trust assets were bequeathed to Richard McIntyre, with the residuary trust after Richard McIntyre's death to Notre Dame to be used for a sculpture in front of the art museum. *Id.;* ECF 14-4.

In 2011, McIntyre continued to pay various expenses for Fr. Senk, and to write him personal checks. *Id.* ¶¶ 50-51. Richard McIntyre directly asked Fr. Senk to limit his time with McIntyre, and to decline to accept her money. *Id.* ¶ 52 (indicating that McIntyre had "mental confusion"). However, Fr. Senk continued to accept the monetary gifts and labor. *Id.* ¶ 53.

In the ensuing months, Shell Point Retirement Community asked McIntyre to discontinue volunteer work, due to her deteriorated mental status. *Id.* ¶ 57. In addition, St. Isabel's asked McIntyre to discontinue her longtime service as a Eucharistic Minister, because she could not keep track of the schedule or recite the required prayers, due to her progressing condition. *Id.* ¶ 58. Even so, Fr. Senk continued to accept large checks and gifts from McIntyre. *Id.* ¶ 60.

On July 9, 2012, McIntyre again amended the Trust (the "First 2012 Amendment"). *Id.* ¶ 64. This Amendment directed the trustee to pay the Trust income to "my friend" Fr. Senk, for life, as well as to make discretionary distributions from principal as the Trustee deems necessary for Fr. Senk's health, support, and maintenance. ECF 14-5 at 2. Again, the residuary Trust, if any, was to be distributed to Notre Dame for the erection and maintenance of a sculpture in front of the art museum. *Id.* at 3. Notably, the First 2012 Amendment removed the "Family Trust," which benefited McIntyre's husband, Richard McIntyre, to the benefit of Fr. Senk. *Id.*

About one month later, McIntyre again amended the Trust (the "Second 2012 Amendment"). ECF 14-6. The Second 2012 Amendment was near identical to the First 2012 Amendment, except that it removed the words "my friend" to describe Fr. Senk. *Id.*

In 2013, Fr. Senk continued to accept large personal checks from McIntyre, despite the fact that many of the checks she gave him contained errors or were missing information. ECF 3 ¶¶ 70-71. Fr. Senk and Flaherty took several vacations in 2013. *Id.* ¶ 69.

In January, 2014, Richard McIntyre passed away unexpectedly.  *Id.* ¶ 74. At and after his funeral, other family members expressed concern to Fr. Senk about his continued interaction with McIntyre. *Id.* ¶ 75. Nevertheless, Fr. Senk traveled to Europe with McIntyre in September, 2014. *Id.* ¶ 81. Personal checks continued to be written to Fr. Senk, even after the point at which McIntyre could no longer fill in a check herself.  *Id.* ¶¶ 84-85. Eventually, McIntyre's family relocated her to an assisted living facility in Baltimore in mid-2015. *Id.* ¶ 90.  She died on December 12, 2017, leaving no children or grandchildren. *Id.* ¶¶ 90-91.

## II.   Personal Jurisdiction

### A. 12(b)(2) Motion to Dismiss Standard

Fr. Senk's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) challenges this Court's personal jurisdiction over him.  Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). When "a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396 (citing *Combs*, 886 F.2d at 676).  To determine whether the plaintiff has met this burden, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  *Combs*, 886 F.2d at 676.  The court is not required to "look solely to the plaintiff's proof in drawing" all reasonable inferences in the plaintiff's favor, and may also look at the defendant's proffered proof and assertions regarding the defendant's lack of contacts

with the forum state. *See Mylan Labs., Inc.*, 2 F.3d at 62 ("Thus, the district court correctly looked both to Mylan's and to Akzo's proffered proof").

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *Carefirst of Md.*, 334 F.3d at 396. To exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Id.* When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone v. Deutsche Bank Nat'l Tr. Co.*, Civil Action No. RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *see also Mylan Labs.*, 2 F.3d at 61 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 178 (1938)). Maryland courts have consistently held that Maryland's "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005); *see also Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 984 A.2d 492, 501 (2009). Nonetheless, both prongs must be satisfied in order to properly exercise personal jurisdiction. *Pinner v. Pinner*, 2020 WL 1025517, at *6 (Ct. App. Md. Mar. 3, 2020).

Under the first prong, the plaintiff must typically identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001) ("It is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction."). Under the second prong, "due process requires only

that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milleken v. Meyer*, 311 U.S. 457, 463 (1940)); *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002). This "minimum contacts" analysis depends on the number and relationship of a defendant's contacts to the forum state, and whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Int'l Shoe*, 326 U.S. at 316-19.

Finally, a court may exercise two types of personal jurisdiction, "general" or "specific." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

"Specific" jurisdiction, on the other hand, arises when there is an "affiliation[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919; *see also Carefirst of Md.*, 334 F.3d at 397. To assess specific jurisdiction, the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

### B. Analysis

Fr. Senk contends that this Court does not have general or specific personal jurisdiction over him.   ECF 8.   Although Plaintiff appears to concede that there is no basis for general jurisdiction, because Fr. Senk does not reside in Maryland, she maintains that this Court has specific jurisdiction.  *See* ECF 9 at 8.

### 1.   Statutory basis for jurisdiction in Maryland

As the statutory basis for personal jurisdiction, Plaintiff cites a specific and relatively new provision in Maryland's Estates and Trusts Article, which provides:

> With respect to the interests of a beneficiary of a trust having the principal place of administration of the trust in the State, the beneficiary is subject to the jurisdiction of the courts of the State regarding a matter involving the trust.

Md. Code Ann., Estates & Trusts Art. § 14.5-202(b)(1).  Courts have noted that the provision, enacted in 2015, "creates a 'long-arm' type jurisdiction over out-of-state beneficiaries of Maryland trusts."  *Potts v. Potts,* Civil No. 13-1986-WDQ, 2015 WL 4528143, at *4 (D. Md. July 24, 2015). This Court agrees with Plaintiff that the provision would permit Maryland courts to exercise jurisdiction over Fr. Senk, if such jurisdiction would be constitutionally permissible.

Alternatively, in her Opposition to the Motion to Dismiss, Plaintiff invokes Maryland's long-arm statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103; *see also* ECF 9 at 7 n.3 (invoking "the long-arm statute in this Opposition as an alternative ground for jurisdiction.").  To support this alternative, Plaintiff cited *Under Armour, Inc. v. Battle Fashions, Inc.,* 294 F. Supp. 3d 428, 432 (D. Md. 2018). *Id.* ("[T]he plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss.").  However, Maryland's long-arm statute has six enumerated acts that can support the exercise of personal jurisdiction.  Md. Code Ann., Cts. & Jud. Proc. § 6-103. Plaintiff, in her original filing, failed to identify any specific subsection of

Maryland's long-arm statute that she believes is applicable to her case. The Court afforded Plaintiff

the opportunity to supplement her filing, and she clarified that the *Senk-Gallagher* action, in her

view, constitutes the "transaction of business" within the meaning of § 6-103(b)(1), *see* ECF 16 at

1–2. However, under Maryland's long-arm statute, the lynchpin of a plaintiff's assertion of specific

jurisdiction is that the plaintiff's claims *arise out of* acts that the defendant performed in Maryland.

*See* MJCP § 6-103(a) ("If jurisdiction over a person is based solely upon this section, he may be

sued only on a cause of action arising from any act enumerated in this section.").  The only act

Plaintiff alleges Fr. Senk performed in Maryland is the filing of a proceeding in Maryland state

court, which is described more fully below.  Because Plaintiff's causes of action against Fr. Senk

do not relate to the state court proceeding he filed, Maryland's long-arm statute does not provide

a basis for the exercise of personal jurisdiction.

### 2.  Due Process

 As noted above, even if the "long-arm" provision of Maryland's Estates and Trusts Article

provides a statutory basis for personal jurisdiction, the Court must then decide whether its exercise

of personal jurisdiction over Fr. Senk would comport with the requirements of the Due Process

Clause of the Fourteenth Amendment.  The question is particularly important where, as here, the

statutory basis is something other than Maryland's long-arm statute itself, which was specifically

designed to be co-extensive with due process requirements.  *See, e.g., Bond*, 391 Md. at 721.

The relevant constitutional question is whether an out of state defendant has "certain

minimum contacts" with the forum state, "such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  *Int'l Shoe*, 326 U.S. at 316 (quoting

*Milliken v. Meyer*, 311 U.S. 457 (1940)).  The Supreme Court has held that "even a single act"

between an in-state resident and a non-resident defendant may suffice to establish personal

jurisdiction, as long as it creates a "substantial connection" with the forum. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 n. 18 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  Because, as noted above, this Court lacks general jurisdiction over Fr. Senk, a Florida resident, the question becomes whether specific jurisdiction can lie under the circumstances presented.

Plaintiff relies on a single act Fr. Senk took in Maryland, the filing of a proceeding in Circuit Court for Baltimore County, *Father Christopher Senk v. Mary Lindsay Riehl Gallagher*, Case No. C-17-4200 ("the *Senk-Gallagher* action").  ECF 9 at 7 ("Because the Defendant filed suit in Maryland and invoked the protections of Maryland law in an attempt to safeguard the same beneficiary interests at issue in the Complaint, the exercise of personal jurisdiction here also satisfies due process.").  The named "defendant" in that proceeding is McIntyre's niece, and the proceeding consisted of a pre-suit notice of deposition *duces tecum,* for the purpose of perpetuating evidence under Maryland Rule 2-404.  *See, e.g.,* Md. Rule 2-404(a)(1) ("A person who may have an interest in an action that the person expects to be brought may perpetuate testimony or other evidence relevant to any claim or defense that may be asserted in the expected action in accordance with these rules."); Md. Rule 2-404(a)(3) ("The notice, request, or motion shall be filed in the circuit court in the county of residence of any expected resident adverse party.").  Specifically, in his deposition notice, Fr. Senk sought documentation relating to the Trust, various powers of attorney, McIntyre's mental health status, and allegations made against Fr. Senk by McIntyre's family, for use in an "anticipated" proceeding that would challenge Fr. Senk's status as beneficiary. *See* ECF 9-2 Gallagher filed a motion to quash Fr. Senk's notice of deposition *duces tecum.* ECF 9-3. Fr. Senk appeared in court in Maryland on August 29, 2017, for the sole court hearing associated with the proceeding. *Id.* Gallagher's motion to quash Fr. Senk's discovery request was

granted. *Id.* Despite some additional filings relating to a motion for sanctions, no additional rulings were made, and no further proceedings have occurred in the matter since the discovery request was quashed in 2017.  *Id.*

As noted above, the test for specific jurisdiction assesses: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Fr. Senk purposefully availed himself of a very limited provision of Maryland law, allowing a party who anticipates litigation with a Maryland resident to obtain certain pre-suit discovery.  Further, the allegations in Plaintiff's complaint all arise out of Fr. Senk's conduct in Florida, specifically his interactions with McIntyre. None of the allegations in the complaint pertain to Fr. Senk's isolated attempt to obtain discovery through the *Senk-Gallagher* proceeding.

Looking at the third factor, the exercise of jurisdiction would not be constitutionally reasonable, as it would not comport with "fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International* Shoe).  The various iterations of the Trust, attached to Plaintiff's Complaint, all reflect that the Trust would be administered in and governed by the laws of Florida.  ECF 14. Plaintiff has not established how the trust came to be administered in Maryland, and it would be patently unfair to allow a trustee to unilaterally change the situs, subjecting a beneficiary to personal jurisdiction in a state with which he had no contacts, minimal or otherwise.  Fr. Senk's efforts to preserve evidence from McIntyre's family in

Maryland, in anticipation of litigation about the validity of the Trust amendments, do not amount to the constitutionally required minimum contacts to establish jurisdiction.

## III.    Motion to Transfer

Although Plaintiff maintains that this Court has personal jurisdiction over Defendant, she moves, as an alternative, for transfer to the United States District Court for the Middle District of Florida. *See generally* ECF 18-1. Under 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."   District courts within this circuit consider "four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servcs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

The first factor does not materially affect the analysis here, where a plaintiff, instead of a defendant (as is customary), has moved for transfer of venue. *See Trustees of the Plumbers*, 791 F.3d at 444 ("Given the substantial weight accorded to this first factor, Defendants need to make a compelling showing on the remaining factors"). Additionally, Defendant "agrees that the proposed transferee court was the proper forum for Plaintiff to bring this action initially, and that litigation would be vastly more convenient in Florida." ECF 19 at 3 n.1. Instead, Defendant contends that transfer would not be "in the interest of justice" because "this is a predicament of Plaintiff's own making." *Id.* at 1.

Certainly, courts have declined to transfer cases when they detected bad faith on the part of the entity seeking transfer. *See, e.g.*, *Gov't of Egypt Procurement Office v. M/V Robert E. Lee*, 216 F. Supp. 2d 468, 473 (D. Md. 2002). In *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir.

1993), 116 women filed a products liability action in the United States District Court for the District of Maryland against defendant Searle & Company. *Id.* at 1198. However, the district court granted Searle's motion to dismiss for lack of personal jurisdiction. *Id.* In addition, the district court denied the plaintiff's motion to transfer the case to a different federal court, which, as here, the plaintiff proposed as an alternative to dismissal. *See id.* at 1200. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed. Pertinent here, the Court explained,

> [W]e hold that a district court does not abuse its discretion when it denies as not in the interest of justice, a plaintiff's motion under section 1406(a) or section 1404(a) to transfer a case from an improper forum because the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper.

*Id.* at 1202.

Applying the rule to the facts of that case, the panel found that there was "no question that plaintiffs' attorneys here could have reasonably foreseen" that the Maryland district court lacked personal jurisdiction over the action. *Id.* Specifically, the corporation not only had very minimal contacts with Maryland, but the plaintiffs' counsel should have been aware of a Fourth Circuit decision that was dispositive on the issue of personal jurisdiction under those circumstances. ("In *Ratliff* [*v. Cooper Labs.*, 444 F.2d 745 (4th Cir. 1971)], we addressed whether advertising and solicitation activities alone constitute the type of 'continuous corporate operation' within a forum state that justifies general jurisdiction over a defendant"). Here, by contrast, the primary case Defendant cites to support his argument for lack of jurisdiction was published after Plaintiff filed this action. *See* ECF 11 (referring the Court to *Pinner v. Pinner*, 201 A.3d 26 (Md. Ct. Spec. App. 2019)). Furthermore, given the distinct facts of that case, this Court would not impute bad faith to

Plaintiffs' counsel for filing in this jurisdiction, even if *Pinner* had been published prior to this lawsuit.[2]

Defendant's contention that Plaintiff filed in this Court in bad faith is belied by the record, and by the extensive briefing thus far. Plaintiff has argued vociferously that Defendant's appearance in Maryland for a hearing in the *Senk-Gallagher* action renders the exercise of jurisdiction consistent with due process. *See, e.g.*, ECF 9 at 4–6. While, as explained above, this Court takes a different view, there is no evidence that Plaintiff filed this action in bad faith or for the purpose of harassment. Both parties now agree that Florida is the proper venue for this lawsuit, and this Court concurs that transfer is in the interest of justice.

## IV.    Conclusion

For the reasons set forth above, Plaintiffs' Motion to Transfer to the United States District Court for the Middle District of Florida, ECF 18, is GRANTED, and Defendant's Motion to Dismiss, ECF 8, is DENIED as moot.  A separate Order follows.


Dated: May 28, 2020                                    /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge

---

[2] For instance, unlike Defendant here, the defendant in *Pinner* did not personally appear in the state where personal jurisdiction was at issue.

14